UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
SAMUEL DUKORE, et al.,         )
                               )
        Plaintiffs,            )
                               )
        v.                     )     Civil Action No. 12-409 (RWR)
                               )
DISTRICT OF COLUMBIA, et al.,  )
                               )
        Defendants.            )
_____)
```

### MEMORANDUM OPINION

Plaintiffs Samuel Dukore and Kelly Canavan bring damages claims under 42 U.S.C. § 1983 against Metropolitan Police Department ("MPD") Officers Michael O'Dea, Robert Reese, and Hashim Zrien, and Lieutenant Allan Thomas, and Department of Commerce and Regulatory Affairs ("DCRA") Inspector Gilbert Davidson (collectively, the "individual defendants"), alleging that they violated the First, Fourth, and Fifth Amendments of the U.S. Constitution and engaged in a civil conspiracy. The plaintiffs also bring common law claims against the individual defendants and the District of Columbia, the MPD, and the DCRA. The defendants move to dismiss the plaintiffs' second amended complaint or, in the alternative, for summary judgment. Because the individual defendants are entitled to qualified immunity from the plaintiffs' First and Fourth Amendment claims, and because the plaintiffs failed to state claims of civil conspiracy, false arrest, false imprisonment, and procedural due process

violations, the defendants' motion will be granted as to those claims. Because the plaintiffs' second amended complaint states a claim for conversion, the defendants' motion will be denied as to that claim. At plaintiffs' request, however, that claim will be dismissed without prejudice.

BACKGROUND

Plaintiffs are members of the Occupy D.C. movement.[1]  2d Am. Compl. ¶ 10.  Around 10:00 p.m. on February 13, 2012, the plaintiffs set up a tent on a sidewalk in Washington, D.C. in connection with an Occupy D.C. protest.  Id. ¶¶ 14, 16; Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J. ("Defs.' Mot."), Stmt. of Material Facts ¶ 1; Pl.'s Stmt. of Facts ¶ 1. The tent "clearly identified the protest as part of Occupy DC." 2d Am. Compl. ¶ 20.  The MPD defendants warned the plaintiffs multiple times that if they did not remove the tent, they would be arrested.  Id. ¶¶ 25-27.  One of the MPD defendants consulted

---

[1] The plaintiffs describe the Occupy Movement as a people-initiated movement that commenced with Occupy Wall Street in Zucotti Park, now called Liberty Square, in Manhattan's Financial District in New York City on September 17, 2011.  At its peak, Occupy had spread to hundreds of cities, towns and states in the United States and to more than 1500 locations worldwide.  The movement seeks to expose how the wealthiest 1% of society are promulgating an unfair global economy that is harming people, and destroying communities worldwide.  The Occupy protesters have come out to protest and to petition the government for more economic equality through societal and governmental changes.
2d Am. Compl. ¶ 11.

with Inspector Davidson who advised the officer that the plaintiffs were violating a District of Columbia municipal regulation.  <u>Id.</u> ¶ 25.  When the plaintiffs refused to leave the tent, the MPD defendants arrested the plaintiffs and took the plaintiffs' tent.  <u>Id.</u> ¶¶ 26-27.

The plaintiffs' second amended complaint seeks damages from all of the defendants for false arrest and false imprisonment and conversion of their tent.  The complaint also brings damages claims under 42 U.S.C. § 1983 against the individual defendants alleging that the defendants violated the plaintiffs' rights under the First, Fourth, and Fifth Amendments.  The complaint also alleges that the individual defendants violated § 1983 by engaging in a civil conspiracy to violate the plaintiffs' First and Fourth Amendment rights.

The defendants move to dismiss the second amended complaint or, in the alternative, for summary judgment, arguing, in part, that the individual defendants are entitled to qualified immunity from the plaintiffs' constitutional claims.  The defendants also argue that the second amended complaint fails to allege sufficient facts to state Fifth Amendment and D.C. common law claims.  The plaintiffs oppose.

## DISCUSSION

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff fails to state a claim under which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 129-30 (D.C. Cir. 2012).

When considering a Rule 12(b)(6) motion, a court construes the complaint "in the light most favorable to the plaintiff and 'the court must assume the truth of all well-pleaded allegations.'" Bonaccorsy v. District of Columbia, 685 F. Supp. 2d 18, 22 (D.D.C. 2010) (quoting Warren v. District of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004)). In deciding a motion to dismiss, a court may consider "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).[2]

---

[2] In support of their motion, the defendants present matters outside the pleadings. Because the matters are not considered in resolving the defendants' motion, this motion will be treated as a motion to dismiss and will not be treated as a motion for

I.  CONSTITUTIONAL CLAIMS

The defendants move to dismiss the plaintiffs' § 1983 damages claims arguing that the individual defendants are entitled to qualified immunity.  Defs.' Mot., Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J. ("Defs.' Mem.") at 6-18.  The defendants also argue that the plaintiffs did not state a procedural due process claim under the Fifth Amendment.  Id. at 18-21.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "[T]he defense of qualified immunity challenges the complaint for failure to state a claim upon which relief may be granted."  Bailey v. U.S. Marshal Serv., 584 F. Supp. 2d 128, 131 (D.D.C. 2008); see also Ford v. Mitchell, 890 F. Supp. 2d 24, 32 (D.D.C. 2012).

To resolve a government official's qualified immunity claim, "a court must decide [(1)] whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right [and (2)] whether the right at issue was 'clearly established' at the time of the defendant's alleged

summary judgment.  See Fed. R. Civ. P. 12(d).

misconduct." <u>Pearson</u>, 555 U.S. at 232 (quoting <u>Saucier v. Katz</u>,

533 U.S. 194, 201 (2001)). In analyzing the first issue, courts

determine whether "facts alleged show the officer's conduct

violated a constitutional right." <u>Saucier</u>, 533 U.S. at 201.

"The relevant, dispositive inquiry in determining whether a right

is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation

he confronted." <u>Id.</u> at 202. Courts may exercise their

discretion as to which of these prongs to address first, because

if a constitutional right is not clearly established, defendants

are entitled to qualified immunity whether or not that right was

violated. <u>See</u> <u>Pearson</u>, 555 U.S. at 236; <u>Jones v. Horne</u>, 634 F.3d

588, 597 (D.C. Cir. 2011).

A. <u>First Amendment claim</u>

The First Amendment guarantees the right to free speech.

U.S. Const. amend. I. The plaintiffs allege that the defendants

violated their clearly established right to be free "from

government disruption of, interference with, or retaliation for,

engagement in free speech, assembly, association, petition and

free press activities," Mem. of P. & A. in Opp'n to Defs.' Mot.

to Dismiss or, in the Alternative, for Summ. J. ("Pls.' Opp'n")

at 6 (internal quotation marks omitted), by arresting them in

retaliation for their "exercise of their right to express

themselves by displaying a tent as part of Occupy DC," 2d Am.

Compl. ¶ 45.  The defendants argue that they are entitled to

qualified immunity from the plaintiffs' First Amendment claim, in

part, because the existing law at the time of the arrest did not

put the officers on notice that their conduct would be clearly

unlawful.  If the individual defendants reasonably believed that

the plaintiffs' actions violated a law, the plaintiffs "had no

clearly established First Amendment right to express [themselves]

as [they] did."  <u>Olaniyi v. District of Columbia</u>, 416 F. Supp. 2d

43, 54 (D.D.C. 2006).

> 1.  Whether the individual defendants reasonably
>     relied on title 24, section 121.1 of the D.C.
>     Municipal Regulations

The individual defendants allege that the MPD defendants

arrested the plaintiffs for violating title 24, section 121.1 of

the D.C. Municipal Regulations.  Section 121.1 provides that

"[n]o person or persons shall set up, maintain, or establish any

camp or temporary place of abode in any tent . . . on public or

private property, without the consent of the Mayor of the

District of Columbia."  D.C. Mun. Regs. tit. 24, § 121.1.

Generally, an officer is entitled to assume that a

regulation enacted by a state legislature is valid.  <u>See</u> <u>Lederman</u>

<u>v. United States</u>, 291 F.3d 36, 47 (D.C. Cir. 2002); <u>cf.</u> <u>Grossman</u>

<u>v. City of Portland</u>, 33 F.3d 1200, 1210 (9th Cir. 1994) ("[A]n

officer who reasonably relies on the legislature's determination

that a statute is constitutional should be shielded from personal

liability."). This is because "'[t]he enactment of a law forecloses speculation by enforcement officers concerning its constitutionality -- with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.'" Lederman, 291 F.3d at 47 (quoting Michigan v. DeFillippo, 443 U.S. 31, 38 (1979)). Thus, an officer who relies on a duly enacted regulation is entitled to qualified immunity unless the regulation is grossly and flagrantly unconstitutional. See Kroll v. U.S. Capitol Police, 847 F.2d 899, 902 (D.C. Cir. 1988) (explaining that "defendant's entitlement to qualified immunity raises only a narrow question").

In their second amended complaint, the plaintiffs argue that the defendants should have known that § 121.1 was "plainly unconstitutional on its face and as applied to the Plaintiffs' conduct" under the First Amendment because the regulation grants "completely unfettered discretion to the Mayor, without any standards or guidelines, to determine which protesters are allowed to establish abodes in tents as expressive activity, or activity facilitative of speech, and which ones are not." 2d Am. Compl. ¶ 30. However, the plaintiffs do not further argue that the regulation was so grossly unconstitutional that a reasonable person should have known that it was unconstitutional.[3] Because

_____

[3] In their opposition, the plaintiffs argue that a reasonable person would have known that § 121.1 is not narrowly

the plaintiffs have not shown that § 121.1 was grossly or

flagrantly unconstitutional, the individual defendants were

entitled to assume that § 121.1 was valid.[4]

---

tailored to serve a significant government interest and that the
regulation's licensing scheme does not "'contain adequate
standards to guide the official's decision and render it subject
to effective judicial review.'" Pls.' Opp'n at 13-14 (quoting
Thomas v. Chi. Park Dist., 534 U.S. 316, 323 (2002)). Even if
the plaintiffs were correct that § 121.1 is not narrowly
tailored, they have not shown that the regulation is flagrantly
unconstitutional. See Lederman, 291 F.3d at 47 (finding that
although regulatory qualifiers "cannot begin to satisfy the
narrow tailoring requirement" the regulation was not grossly
unconstitutional because the regulation made some attempt to
narrow its breadth). Section 121.1 does not require that a
person obtain a permit before using any public space. Instead,
the regulation requires a permit before a person can establish a
"temporary place of abode." D.C. Mun. Regs. tit. 24, § 121.1.
Thus, there is some attempt to tailor the regulation. Moreover,
contrary to the plaintiffs' assertion that "there are no
standards [in § 121.1] to guide [the Mayor's] discretion," Pls.'
Opp'n at 14, the municipal regulations provide general guidelines
for when the Mayor may issue a permit to use public space, see
D.C. Mun. Regs. tit. 24, § 100.

[4] The plaintiffs also argue that the defendants knew or
should have known that § 121.1 "does not prohibit the use of
tents for First Amendment assemblies" because the First Amendment
Assemblies Act ("FAAA"), D.C. Code § 5-331.05(g), "establishes a
right to use a stand or structure in connection with a First
Amendment assembly" without a permit. See 2d Am. Compl. ¶ 31.
Even assuming, as the plaintiffs argue, that § 121.1 is unlawful
under the FAAA, the plaintiffs have shown only that the
defendants applied the wrong law. However, the individual
defendants are still entitled to qualified immunity because
qualified immunity extends to officers who make "mere mistakes in
judgment, whether the mistake is one of fact or one of law." See
Butz v. Economou, 438 U.S. 478, 507 (1978). Furthermore, if
anything, the alleged conflict between § 121.1 and the FAAA makes
the law, and thus the plaintiffs' rights under the law, *less*
clear. Therefore, the plaintiffs have not shown that they had a
clearly established right to set up their tent on a public
sidewalk as part of a protest.

2.  Arresting the plaintiffs

Because the individual defendants were entitled to believe that § 121.1 was valid, the individual defendants' "assertion of qualified immunity to the [plaintiffs'] First Amendment claim thus hinges on whether a reasonable officer, possessing the same information as the [individual] defendants, could have viewed the [plaintiffs'] behavior" as a violation of § 121.1.  See Olaniyi, 416 F. Supp. 2d at 54 (internal quotation marks omitted); see also Pearson, 555 U.S. at 244 (explaining that whether an officer's actions violated a clearly established law turns on the "'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken'" (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999))).

An officer must have probable cause to support making an arrest.  See U.S. Const. amend. IV.  Thus, the individual defendants are immune from suit if "reasonable officers in their positions 'could have believed that probable cause existed to arrest [the plaintiffs].'"  Reiver v. District of Columbia, 925 F. Supp. 2d 1, 7 (D.D.C. 2013) (quoting Hunter v. Bryant, 502 U.S. 224, 228-29 (1991)).  A police officer has probable cause for an arrest if the officer "ha[s] enough information to warrant a man of reasonable caution in the belief that a crime has been committed and that the person arrested has committed it."  Barham

v. Ramsey, 434 F.3d 565, 572 (D.C. Cir. 2006) (internal quotation marks omitted).

The plaintiffs allege that the individual MPD defendants did not have probable cause to arrest them for violating § 121.1. See Pls.' Opp'n at 7-12. The defendants counter that the plaintiffs have not shown that it would have been clear to a reasonable officer that the plaintiffs were not violating § 121.1. Defs.' Mem. at 16-17.

The defendants argue that the individual MPD defendants had probable cause to arrest the plaintiffs because the plaintiffs set up a tent on a public sidewalk and were inside the tent after 10:00 p.m. They contend that a tent is a "traditional 'temporary place of abode'" and the officers had reasonable cause to believe that a tent occupied late at night was a "temporary place of abode." See id. at 13-14; see also Reply to Pls.' Opp'n to Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J. ("Defs.' Reply") at 17. Because the tent was set up on a public sidewalk at a time when most people sleep, tents are commonly used as temporary abodes, and the plaintiffs did not have a permit, say the defendants, it was reasonable for the individual defendants to believe that the plaintiffs were violating § 121.1.

The plaintiffs admit that they set up a tent on the sidewalk, see 2d Am. Compl. ¶ 16, but they argue that the defendants did not have probable cause to believe that the tent

was an "abode" for at least two reasons.  First, they argue that
"there was no visible sleeping/living equipment inside or around
the tents."  Id. ¶ 28.  Second, they argue that the tent was not
an abode because signs and messages on the tent demarcated it as
"clearly part of a protest," id., and that evidence that the tent
was part of a protest negates any presumption that the tent was
being used as an abode, see Pls.' Opp'n at 9.[5]

The plaintiffs have not shown that it was unreasonable for
an officer to believe, even mistakenly, that a tent occupied late
at night was a temporary abode under § 121.1 because there was no
visible sleeping and living equipment.  For instance, the
plaintiffs have not shown that it was unreasonable for an officer
to believe that they could have temporarily resided in the tent
without additional equipment or that the plaintiffs could reside
in a sparsely populated tent.  Moreover, § 121.1 does not require
that all "abodes" contain sleeping and living materials.

Similarly, that the plaintiffs' tent had signs and messages
on it did not make the officers' conduct unreasonable.  The
plaintiffs admit that other Occupy D.C. protestors were using
tents as both instruments of protest and abodes several blocks

---

[5] Plaintiffs also argue that because they had not yet slept
in the tent, it was not an abode, and that at the time of their
arrest there was only a remote possibility that they would use it
as an abode at some point in the future.  See Pls.' Opp'n at 11.
However, § 121.1 prohibits *setting up* a temporary abode and does
not require a person to have already slept in the abode for a
violation to occur.  See D.C. Mun. Reg. tit. 24, § 121.1.

away.  See Pls.' Opp'n at 9-10.  The plaintiffs identified
themselves to the officers as part of the Occupy movement.  See
2d Am. Compl. ¶ 20.  It was not unreasonable for the individual
defendants to believe that the plaintiffs' tent was being used
both as a sign of protest and an abode.[6]  See Defs.' Reply at 17.
Accordingly, the individual defendants are entitled to qualified
immunity on the plaintiffs' claim that arresting them violated
their rights under the First Amendment because it was not
unreasonable for the individual defendants to believe that
probable cause existed that the plaintiffs were violating
§ 121.1.

        3.   Taking the plaintiffs' tent

     "[W]hile the general rule under the Fourth Amendment is that
any and all contraband, instrumentalities, and evidence of crimes
may be seized on probable cause (and even without a warrant in
various circumstances), it is otherwise when materials
presumptively protected by the First Amendment are involved."
Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 63 (1989).  The
plaintiffs argue that their tent was material "presumptively
protected by the First Amendment."  As such, taking their tent,
even after a valid arrest, violated the First Amendment.  See

---

        [6] The fact that other Occupy D.C. protestors in Farragut
Park were using tents as abodes does not itself establish
probable cause or create "guilt by association," as the
plaintiffs suggest.  Pls.' Opp'n at 9.  Rather, a reasonable
officer would understand that some tents used to protest can also
be abodes.

Pls.' Opp'n at 24. In <u>Fort Wayne Books</u>, the Supreme Court
considered whether seizing pretrial all of the publications of a
bookstore that was allegedly distributing obscene materials was
constitutional. There, Fort Wayne Books was charged, along with
two other corporations, with violating Indiana's RICO law by
"engag[ing] in a pattern of racketeering activity by repeatedly
violating the state laws barring the distribution of obscene
books and films." <u>Fort Wayne Books</u>, 489 U.S. at 51. The trial
court found that there was probable cause that the bookstore had
violated Indiana's RICO law and ordered that the bookstore,
including all of its publications, be seized. The Supreme Court
reversed the pretrial seizure order. The Court held that
"[w]hile a single copy of a book or film may be seized and
retained for evidentiary purposes based on a finding of probable
cause, the publication may not be taken out of circulation
completely until there has been a determination of obscenity
after an adversary hearing." <u>Id.</u> at 63. Thus, there is an
exception to the general rule that any evidence of a crime can be
"seized on probable cause" where "materials presumptively
protected by the First Amendment are involved." <u>Id.</u>

Here, the plaintiffs assume without explanation that <u>Fort
Wayne Books</u> applies to this case. However, <u>Fort Wayne Books</u> was
an obscenity case and the plaintiffs have not established that
their case is entitled to the same additional protections. <u>Cf.</u>

<u>Boggs v. Rubin</u>, 161 F.3d 37, 41 (D.C. Cir. 1998) (noting that
<u>Fort Wayne Books</u> is an obscenity case "where significant judgment
was needed to determine if the seized materials violated
community standards" and distinguishing the seizure of
counterfeit currency an artist created because "[t]he important
First Amendment concerns advanced by the Supreme Court in the
obscenity cases [were] not present to the same extent" in the
counterfeit currency case). Even if <u>Fort Wayne Books</u> could apply
to the seizure of all tents of Occupy D.C. protestors, the
plaintiffs complain only that it was unconstitutional for the
officers to take their one tent. Taking the plaintiffs' single
tent is more similar to seizing a single copy of a book -- which
the <u>Fort Wayne Books</u> Court allowed on a finding of probable cause
-- than to taking all copies of a publication completely out of
circulation, which requires a greater showing. Because the
plaintiffs have not shown that taking their tent requires more
than a showing of probable cause, seizing the plaintiffs' tent
after a valid arrest did not violate the plaintiffs' First
Amendment rights. Thus, the individual defendants are entitled
to qualified immunity from the plaintiffs' claim that taking
their tent violated the First Amendment.

   B.   <u>Fourth Amendment claim</u>

   The Fourth Amendment prohibits unreasonable searches and
seizures. U.S. Const. amend. IV. The plaintiffs allege that the

defendants violated this clearly established right.  The
defendants counter that the officers had probable cause to arrest
the plaintiffs and thus did not violate the plaintiffs' Fourth
Amendment rights.

> 1.    Arresting the plaintiffs

An officer making an arrest is entitled to qualified
immunity where clearly established law does not show that the
seizure violates the Fourth Amendment.  "It is well settled that
an arrest without probable cause violates the [F]ourth
[A]mendment."  <u>Martin v. Malhoyt</u>, 830 F.2d 237, 262 (D.C. Cir.
1987) (citing <u>Gerstein v. Pugh</u>, 420 U.S. 103, 111 (1975)).  As is
discussed above, it was reasonable for the individual defendants
to believe that probable cause existed to arrest the plaintiffs
for violating § 121.1.  Thus, the defendants are entitled to
qualified immunity from the plaintiffs' claim that their arrest
violated the Fourth Amendment because the facts alleged do not
show that the defendants' conduct violated the plaintiffs' Fourth
Amendment rights.

> 2.    Taking the plaintiffs' tent

The plaintiffs also claim that taking their tent without a
warrant violated their Fourth Amendment rights.  2d Am. Compl.
¶ 51.  Seizure incident to arrest is justified "when used to
seize the fruits, implements or evidence of the crime for which
the arrestee is seized in order to prevent its destruction."

<u>United States v. Green</u>, 465 F.2d 620, 621-22 (D.C. Cir. 1972).

Here, the plaintiffs were reasonably arrested for violating

§ 121.1.  During their arrest, the defendants seized the

plaintiffs' tent which the officers could reasonably believe was

a temporary abode.  Because § 121.1 makes setting up a temporary

abode in a tent in a public place illegal, it was reasonable for

the officers to believe that the tent was evidence that the

plaintiffs violated § 121.1.

    C.   <u>Fifth Amendment claim</u>

"The Fifth Amendment Due Process Clause protects individuals

from deprivations of 'life, liberty, or property, without due

process of law.'"  <u>Atherton v. D.C. Office of the Mayor</u>, 567 F.3d

672, 689 (D.C. Cir. 2009) (quoting U.S. Const. amend. V).  The

plaintiffs allege that the defendants took their tent without

notice or a hearing, and without providing the plaintiffs "an

opportunity to present their claim of entitlement to recover the

property," in violation of the Fifth Amendment's procedural due

process guarantee.  <u>See</u> 2d Am. Compl. ¶¶ 58-59.  The defendants

argue that the plaintiffs have not stated a procedural due

process claim.

"In general, a procedural due process violation consists of

a (1) deprivation by the government, (2) of life, liberty, or

property, (3) without due process of law."  <u>Spadone v. McHugh</u>,

864 F. Supp. 2d 181, 188 (D.D.C. 2012); <u>see also</u> <u>Propert v.</u>

<u>District of Columbia</u>, 948 F.2d 1327, 1331 (D.C. Cir. 1991).
Where adequate post-deprivation state remedies are available, no
cognizable constitutional claim for procedural due process can be
stated. <u>Crawford v. Parron</u>, 709 F. Supp. 234, 237 (D.D.C. 1986)
(citing <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981)).

  D.C. law provides that confiscated property may be returned
to the owner "[u]pon satisfactory evidence of the ownership of
property." D.C. Code § 5-119.06(a). "Seizure or impoundment of
property by the Metropolitan Police Department from an individual
is prima facie evidence of that person's ownership of the
property." D.C. Code § 5-119.06(a-1). Because this adequate
post-deprivation remedy exists, <u>see</u> <u>Dickson v. Mattera</u>, 38 F.
App'x 21, 22 (D.C. Cir. 2002), the plaintiffs cannot state a
procedural due process claim.[7]

III. SECTION 1983 CIVIL CONSPIRACY CLAIM

  The plaintiffs allege that the individual defendants
conspired to violate the plaintiffs' First and Fourth Amendment
rights. To state a civil conspiracy claim, a plaintiff must
demonstrate

---

  [7] In their opposition, the plaintiffs argue that the
defendants have not notified the plaintiffs of any post-
deprivation procedures to get their tent back. The Fifth
Amendment does not require the defendants to notify the
plaintiffs of these procedures. <u>See</u> <u>City of W. Covina v.
Perkins</u>, 525 U.S. 234, 241 (1999) (explaining that the Due
Process Clause does not require "individualized notice of state-
law remedies which . . . are established by published, generally
available state statutes").

(1) an agreement between two or more persons; (2) to
commit an unlawful action, or to commit a lawful act by
unlawful means; (3) an injury caused by an unlawful
overt act performed by one of the parties to the
agreement; and (4) the overt act was done pursuant to a
common scheme.

Bush v. Butler, 521 F. Supp. 2d 63, 68 (D.D.C. 2007) (citing

Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983)).  To

recover under 42 U.S.C. § 1983, plaintiffs must additionally show

"that the purpose of the alleged conspiracy was to deprive the

plaintiffs of their constitutional rights."  Parker v. Grand

Hyatt Hotel, 124 F. Supp. 2d 79, 88 (D.D.C. 2000).

        The defendants argue that the plaintiffs have not stated a

§ 1983 civil conspiracy claim, in part, because the plaintiffs

have not alleged sufficient facts to show that the defendants

agreed to take part in unlawful conduct.  Defs.' Mem. at 24-25.

In their opposition, the plaintiffs did not respond to this

argument.  Thus, the defendants' argument will be deemed

conceded.  See Iweala v. Operational Tech. Servs., Inc., 634 F.

Supp. 2d 73, 80 (D.D.C. 2009) ("It is well understood in this

Circuit that when a plaintiff files an opposition to a motion to

dismiss addressing only certain arguments raised by the

defendant, a court may treat those arguments that the plaintiff

failed to address as conceded." (internal quotation marks

omitted)).  Accordingly, the defendants' motion to dismiss the

plaintiffs' civil conspiracy claim will be granted.

IV.  COMMON LAW CLAIMS

    A.  <u>False arrest and false imprisonment</u>

    "The focal point of [a false arrest or false imprisonment] action is the question whether the arresting officer was justified in ordering the arrest of the plaintiff; if so, the conduct of the arresting officer is privileged and the action fails."  <u>Dellums v. Powell</u>, 566 F.2d 167, 175 (D.C. Cir. 1977).

> Justification can be established by showing that there was probable cause for arrest of the plaintiff on the grounds charged.  A lesser showing can also be made, namely that the arresting officer had reasonable grounds to believe a crime had been committed and that plaintiff's arrest was made for the purpose of securing the administration of the law (i.e., that the officer acted in good faith).

<u>Id.</u> (citations omitted); <u>see also</u> <u>Reiver</u>, 925 F. Supp. 2d at 7 ("To succeed under a claim for common law [false arrest or] false imprisonment, a plaintiff must demonstrate that the police acted without probable cause, in an objective constitutional sense, to effectuate his arrest." (internal quotation marks omitted)).  As is discussed above, it was reasonable for the individual defendants to believe that there was probable cause to arrest the plaintiffs.  Thus, the plaintiffs' false arrest and false imprisonment claims will be dismissed.

    B.  <u>Conversion</u>

    The plaintiffs allege that the defendants "dispossessed" the plaintiffs of their tent or "disposed" of their tent and "wrongfully destroyed" their tent.  2d Am. Compl. ¶ 41.  Under

D.C. law, conversion is "an unlawful exercise of ownership,
dominion and control over the personalty of another in denial or
repudiation of his right to such property." <u>Blanken v. Harris,
Upham & Co., Inc.</u>, 359 A.2d 281, 283 (D.C. 1976). Thus, "[a]
defendant will be liable for conversion if the plaintiff shows
that the defendant participated in (1) an unlawful exercise,
(2) of ownership, dominion, or control, (3) over the personal
property of another, (4) in denial or repudiation of that
person's rights thereto." <u>Gov't of Rwanda v. Rwanda Working
Grp.</u>, 227 F. Supp. 2d 45, 62 (D.D.C. 2002). The defendants argue
that the plaintiffs have not pled facts sufficient to show that
the defendants unlawfully exercised ownership of the plaintiffs'
tent.[8]

In their second amended complaint, the plaintiffs allege
that they were unlawfully arrested by the individual defendants,
<u>see</u> 2d Am. Compl. ¶ 28, that the plaintiffs were in rightful
possession of the tent, <u>id.</u> ¶ 42, and that after they were
arrested, the individual defendants took and destroyed the tent,
<u>id.</u> ¶ 27. Thus, the plaintiffs have sufficiently stated a claim
of conversion by alleging that their arrest was improper and thus

---

[8] In their opposition, the plaintiffs do not directly
address the defendants' legal arguments. However, contrary to
the defendants' assertion in their reply, <u>see</u> Defs.' Reply at 25
n.18, the plaintiffs did not concede the defendants' arguments.
Instead, the plaintiffs argue that they should "succeed on their
common law claims" because they "established that their rights
were violated under § 1983." Pls.' Opp'n at 31.

the subsequent taking and dominion over their tent was unlawful.

Accordingly, the defendants' motion to dismiss this claim will be

denied.[9]

<u>CONCLUSION</u>

The individual defendants are entitled to qualified immunity

from the plaintiffs' First and Fourth Amendment claims.  The

plaintiffs did not state a claim for violation of the Fifth

Amendment, civil conspiracy, and false arrest and false

imprisonment.  The plaintiffs have stated a claim for conversion.

However, at the plaintiffs' request, their conversion claim will

be dismissed without prejudice.  A separate Order accompanies

this Memorandum Opinion.

SIGNED this 19th day of September, 2013.


_____/s/_____
RICHARD W. ROBERTS
Chief Judge

---

[9] However, in their opposition, the plaintiffs request that
"[i]f the Court dismisses Plaintiffs' § 1983 claims, [their
conversion claim] be dismissed without prejudice to re-file in
Superior Court."  Pls.' Opp'n at 31.  Accordingly, the conversion
claim will be dismissed without prejudice.